May it please the court. My name is Brad Condra and I represent the plaintiff and appellant in this matter Montana Trucks LLC. I would like to try to reserve three minutes for rebuttal. Choice of law issues in this case are dispositive of three out of the four principal issues raised in this appeal. At the time of the district court's decision and at the time of the briefing in this matter there was no clear substantive law in the state of Montana that would guide the court in its decision regarding the scope of a valid choice of law provision. On July the 1st 2015 the Montana Supreme Court issued its decision in Masters Group International versus Comerica Bank. The Comerica Bank decision not only addresses the enforceability of a written choice of law clause or provision it goes the next step and addresses the scope of those provisions and specifically with regard to whether a choice of law provision contained in a written contract will apply to tort claims that arise out of that contract. While the Montana Supreme Court stopped short of providing a bright line test in the case of the Comerica Bank case it stated they were not providing a bright line test. The Comerica decision does make clear that in Montana at present the general rule is that when sophisticated commercial entities agree to a choice of law clause the law selected in that clause will apply to all causes of action arising from or related to the contract. Counsel we of course had asked that you all be prepared to discuss this fairly recent case. One question that I have is the contracts in question were drafted a number of years ago when this case did not exist. Under Montana law does the Supreme Court's declaration of clarifications about its choice of law regime if you will relate back to the contracts that we're dealing with here in other words is it simply expository of what the law was but simply hadn't expressed or is this retroactive in some way that would be unfair to apply? I think it's a great question. It is not one that the Comerica court certainly addressed although clearly the Comerica court addressed a choice of law provision that predated its decision and that decision in the Comerica case was dispositive in that case. In fact it reversed the 53 million dollar verdict and so to answer your question directly judge I believe the law would be clear if we looked at the Comerica case and likely cases that would underpin the concept that you've highlighted. So the fact that that exact case addressed the contract that was earlier is somewhat analogous to this right? I believe so your honor. Well do you know of any cases where in contract interpretation the court said well we might this is how we interpret it today but that didn't exist before therefore we're going to go back to some previous law or does the court as a matter of law and contract interpretation interpret a contract as of the controlling legal authority at the time? I'm not aware of a case that holds as you just set forth basically that the law would not be retroactive essentially. So I believe under the Comerica decision which is of course our most recent pronouncement of the law in Montana the law would would apply to the case that currently sits here on appeal pending a decision. How does that affect the if you will the reasonable expectations of negotiating parties involving commercial transactions in Montana? I think that's a great question that was actually discussed at some detail in what I will pronounce probably incorrectly as the Pyatt Boone decision which was cited by both the Montana Supreme Court and it the defendants and respondents in their brief and that court essentially noted that it would be unreasonable to expect that sophisticated parties and that's what we have here would expect that the laws of multiple jurisdictions would apply to a conflict arising out of a singular contract that it was simply illogical and that it provided for disparate results. So if I understand your answer correctly you're saying that because sophisticated parties are involved in this transaction that anybody would understand that the law changes you got a lot of different jurisdictions at least two jurisdictions involved here things happen it's the way it goes you take your put your money down you take your chances is that basically what they're saying? I don't know that the court went that far I believe the court simply explained the logic behind holding that for all disputes arising out of a singular contract certainly sophisticated business entities in trying to have a reasonable expectation about how the contract would be construed or disputes arising there from. And yet in this case aren't aren't we saying that we're really applying the law of Texas right? That's correct. So where do you get the idea that you know reasonable and sophisticated people are doing business in Montana would expect that Montana law would apply and yet it applies Texas law? Oh well with regards specifically to applying the law of the forum to the choice of law question and not to be flippant that dates back to the Erie Doctrine and I think the defense of the respondents here have cited in their brief the fact that the substantive law of the state of Montana resolves the choice of law question and once the question has been answered then the jury instructions. Well nobody was arguing we're applying federal common law here did they? The argument was always we were always applying state law so I don't what Erie has to do with it but we're always applying state law the question is what what were the reasonable expectations here? Do we apply masters straight out in which case it's pretty clear at least in as you say three of the four causes of action about which law applies and what the result is at least as far as the pleading states is concerned. What what do we do with that retroactivity and reasonable expectations aspect? Again I I have to it itself applied retroactively if I could respond to a prefatory question that you said that you asked where does Erie come into this? Erie holds frankly that a federal court sitting in diversity which of course this was will apply the substantive law of the forum state and the Clackson v. Stinter case which we've cited provides that the substantive law of the forum state for purposes of Erie includes the choice of law rules. And of course that assumes that anyone who's drafting these contracts actually has any good idea of how choice of law provision decisions are made which is one of the more complicated procedural questions we address. I believe so and I think the Pyatt Boone case if I may again goes directly to that issue because it speaks not only to the sophistication of the drafter but also the problems with applying the language and focusing too closely on the language versus the and if I could quote to the court what I think is a substantive quote from the case, Pyatt Boone provided that too many choice of law clauses are poorly or haphazardly drafted, parens, and often wholesale copied from other contracts or cases. As such these clauses provide a very weak basis from which to safely infer that the parties did not contemplate non-contractual issues. Under these circumstances slavish reliance on the wording of these clauses amounts to unwise subservience to form over substance. In this particular case the substance is that the clause which is contained within the contract that was agreed to by the parties clearly provides for Texas law. Yeah I want to be sure we're not passing in the night here. Only anybody was suggesting that we're not applying state law nor that the Montana Supreme Court can't declare what this law of the state of Montana is with regard to choice of law. My question was that when you had two sophisticated parties that drafted the contract, put in the choice of law provision, whether or not it was boilerplate and whether or not they properly considered it, it was in there. At the time that they drafted it the law was vague, it was unclear, but it has an enormous impact on the outcome of this case. So the question is, is it fair, does it meet the expectation of the parties to retroactively apply this law? That's the only question, not whether we're going to make up some new law that would change things. And again I wish I didn't sound like a broken record. I believe we go back to the Comerica decision. That was a premise upon which that decision had to rely. Counsel, assume that Comerica applies without regard to the date when the contract was drafted. Assume that the meaning of Comerica is, I think what it would be is everything is controlled by Texas law, not just the contract claims. Tort claims and any other kind of claims in this case are controlled by Texas law. If you assume that that's so, what survives? Is it only the unconscionability issue that is not barred by limitations? What is not barred by limitations if Comerica applies? We believe that, if I understand the question correctly, we believe that all of the claims survive. That the fraud, that the constructive fraud or negligent misrepresentation and hence the punitive damages that is tied directly to that, as well as the basic breach of contract provision. You think nothing is barred by limitations if Texas law applies? Correct. So the two-year statute wouldn't apply? The two-year statute for the fraud claim? Correct. No, because the statute of limitations in Texas for a fraud claim is four years. And so therefore. The contract limitations. Yeah, there's constructive fraud. It depends on how you, it is a two-year, right? Constructive fraud and negligent misrepresentation. Correct, Your Honor. Negligent misrepresentation in Texas is governed by two years. Constructive fraud in Texas is governed by a four-year statute of limitations. So we've obviously argued that our claim encompasses both because the elements are virtually identical. Certainly, so to the to the question then, I misspoke. If we determined what it was, would we leave that for the district court then? You could, although now that you have asked your question, I believe I understand that the negligent misrepresentation claim would be resolved and we would, depending on the date of discovery, we would be, that claim would be disposed of. Correct. Did you want to reserve the remaining time? Yes, I did. Thank you. May it please the court, my name is Katie DeSoto and I'm here representing UD Trucks North America. With me is co-counsel Randy Cox and I will reserve two minutes of my time for his, his presentation. Could you start out by telling us if Texas law applies, what claims are not barred by limitations? If Texas law applies, claims that would not necessarily be barred by limitations would be the fraud claim. I think I disagree with Mr. Condra on his assertion that constructive fraud under Texas law would, would apply. And one thing I want to start off with, Your Honor, noting that, and I believe Judge McKeon, you asked if the district court had considered this. And I would direct the court to the pleadings in this case, which even after Montana Trucks raised the issue of Texas law applying, even after that, they amended their complaint to once again add a Montana cause of action, and that's the constructive fraud and the negligent misrepresentation. After Judge Malloy issued his first summary judgment order dismissing the claims and noting that the constructive fraud, negligent misrepresentation claim was, I believe he said it was suspect or it was, it was weak. We did additional briefing on that and still it was asserted that the Montana law applied. So in terms of whether limitations apply to any constructive fraud or negligent misrepresentation claims, that's just, just not an issue that's been made before the court below. If, if we get back to the fraud claim not being barred, the district court decided that it was barred under Montana law. Montana Supreme Court decided that Texas law applies to a similar contractual choice of law. So the effect would be that it's not barred by limitations. Is there anything for us to do on that claim except remand it to the district court so that the district court can consider it without the rationale that it used? There is, Your Honor. And I guess one point where we also disagree is the breadth and the scope of the... Remember, you're not now addressing opposing counsel. You're addressing me and the more you complicate it with your disputes with opposing counsel, the less I understand what you're trying to tell me. We don't believe that Comerica controls this case. We believe that Comerica holding controls, but under the holding of Comerica, we still believe Judge Malloy would come to the exact same decision. And the reason for that is this. Okay, tell me why fraud... Are you saying then that fraud would be barred by limitations? I'm saying that fraud would still be considered under Montana law, not Texas law, under the holding of Comerica. Are... Because... Because... What would be considered? Because I think what you have to do is... Limitations bar or the substantive law of fraud? I believe, Your Honor, that the fraud claim would actually be determined under Comerica to be subject to Montana law, not Texas law. And because it would be subject to Montana law, the lesser statute of limitations would apply, thereby making their claim time barred. Because... No kidding. Why? Because. I think if you actually read the holding of Comerica, it's not as broad as it may seem. And I would direct you, Your Honor, to the actual language in the forbearance agreement in Comerica, and it states as follows. And this is in relation to whether Michigan law applied or Montana law applied. It shall be governed and controlled in all respects by the laws of the state of Michigan, without reference to its conflict of law provisions, including interpretation, enforceability, validity, and construction. Now, compared to our language in our agreement, it says the parties agree that the law, but not the choice of law, of the state of Texas shall govern the construction and enforcement of this agreement. So a couple of things to note. One, the language in all respects is obviously much more broad than the language that we have in our agreement. So that's the first point. If I'd say it's broad, there's more words, but that doesn't mean broader. Well, I think, Your Honor, the very fact that our contract specified, but not the choice of law, that anticipates that these parties understood... Says you apply Texas law, you apply Montana choice of law. And, Your Honor, I think that anticipates that there would be situations which would not necessarily on its face be governed by Texas law. And what's the difference between that language and the state of Michigan, comma, without reference to its conflict of law provisions, comma? I think, Your Honor, the real operative language is, in all respects, that's the broadening language. And what does that get you? Well, I think it shows... Because if you affirmatively excise out the conflicts of law, which for many years people didn't do that, they would just say, this contract is governed by the law of X. And then they got smart because the business lawyers started talking to the litigators, and they said, you know, now we've got this problem with conflicts of law, and they're putting all this stuff in their contracts. So I'm trying to figure out, what does, in all respects, do for you? I think, Your Honor, when you look at the law, that... Especially the law that the Comerica Court examined and relied upon in coming to its conclusion, one of the common themes that you see in all of those cases is, what is the intent of the parties? What did they mean when they drafted that language? And in fact, the Pyatt Boone case specified that absent a show of intent otherwise, and it's our position, Your Honor, that if Montana Trucks and UD Trucks had intended for this choice of law provision to be as all encompassing as it is argued, if they'd wanted to do that, they would have said, in all respects, relating to everything that may arise from this contract. You're hanging on in all respects. Yes. Now, let's say you don't sell it. Let's say that we think that the clauses are materially indistinguishable, even though the clause used more words than Comerica. Then, is there anything for us to do except affirm on the claims that are barred by Texas law, which would leave one and only one claim, fraud, which we would remand to the district court? I think, Your Honor, another thing that you could do is look at the Texas law and say, does it... Is it related to the contract? Because under Texas law, if Texas law applies, I think under the Dyer case, you could still hold that fraud would not be controlled. And I guess that would be our secondary position, Your Honor. Other than that, I think you're right. I think that the fraud claim would go back to be substantively heard by the district court under the longer statute of limitations in Texas. And then, of course, that would apply to all of the claims that they brought. What role, if any, does the concept that contracts are construed against the drafts person apply in this case? Each had counsel, but you're a big, big company. They're a relatively small company. Do we construe the contract in any way more favorably to the non principal draft person, or is that irrelevant in this case? I believe in this case, Your Honor, it would be irrelevant because these are two commercially sophisticated parties represented by counsel at all times. And so I don't think that's actually a deciding factor in this case. Could you help me on the detail of this case? I don't know if it'll come up or not. On the unconscionability aspect, the justification for it was, well, it applies to both sides. But it's hard to see what practical application there would be of that clause against the local franchise. It seems like the only application would be to bar damages claims against Nissan. I think, Your Honor, in theory, there could be situations where there could be consequential damages against Nissan UD trucks as well. But the reality of it is... Give me one. Okay. Let's say, for example, so if you look at the actual agreement, there are a lot of terms in there about Montana trucks will not defame, Montana trucks will take all steps to make sure that the product is put out in the most advantageous manner. Well, let's say, for example, that Montana trucks said, we don't like Nissan trucks anymore, let's go out and defame them. And all of a sudden, UD trucks had significant sales. That sounds like kind of an odd fantasy. They've got a bunch of Nissan trucks on their lot and you're saying we should get damages if they tell potential buyers these are lousy trucks? Well, if they switch... I think if we're going to expand the world of liability to anything that arises out of this contract, which it sounds like under Comerica, that would be the analysis. If, for example, they violated the agreement by selling additional trucks. So they brought in a different dealer or a different model, a different maker of trucks. And so UD truck sales went down and so... So you're saying we could have sold more Nissan trucks to them if they're also selling... Right. Kenworth trucks. Certainly. Right. And so I think you're right. Did that happen in actuality? No, but that's what the standard that we look at when we're looking at the contract language. Right. So I think in unconscionability... And I can address procedural and substantive unconscionability now. I'll ask you. Okay. So it is still our position that Comerica, under the language of Comerica, that Montana law applies. And if Montana law applies, then the fraud claim is out. Switching now, however, to unconscionability, obviously the burden of proof rests with Montana trucks to show that the contract at the time of its execution was both procedurally and substantively unconscionable. And the district court correctly found that they did not meet their burden. Procedural unconscionability relates to the circumstances by which the contract was made. Substantive unconscionability relates to what the effects or the outcomes are. So I wanna just be sure I understand your position. You're saying that nothing in this case would change despite the Comerica case. Judgmental law would do exactly the same thing. I think if... So in other words, if this court were to find that Comerica is the law of Montana, but under Comerica, the analysis is still the same, which is because Comerica did not provide a bright line rule, and Comerica specifically said, you need to look at the facts and the facts of Comerica. You determine that Comerica does not require the application of Texas law, but instead allows Judge Malloy to come to his conclusion based on the language of the contract itself. If that's the case, then you could affirm in all respects, Your Honor. And obviously, that's what we would urge you to do. So bottom line is Comerica is a cipher. It really doesn't matter. It goes back to the words of the contract. Judge Malloy would do exactly the same thing. I wouldn't say that it's a cipher. I would say it like this. Comerica provides guidance in the way that the court should examine whether the party's actually intended for one state's law to apply to all claims or all causes of action. However, what Comerica does not do is provide a bright line rule stating, if you state the law of X relates to this contract, or whichever words that we use. Obviously, the cases use a variety of rules stating that, if that is the case, the analysis goes out the door. For example, I would imagine that after the Comerica case, sophisticated drafters will provide different language. And certainly... That's because it has an impact. Exactly. Because it retroactively affects contracts. But you're saying in this case, it wouldn't have any impact. We believe, Your Honor, under the language of Comerica and under the language of our contract, it is still a viable and valid interpretation of the contract to say that the parties did not intend for the scope of law... The scope of the choice of law provision to encompass and incorporate all tort claims. Usually... Everybody else but not you. Usually, the manufacturer or the national distributor wants the broadest possible interpretation of these choice of law claims. Usually, it's really important to them that they not get hometowned in whatever locality the customer suing them happens to reside. So I find it hard to believe that on behalf of Nissan, you're saying, in this case, you'd like a federal circuit court decision to interpret a choice of law provision narrowly when Comerica really doesn't give you much basis except that it says, in all respects, and this particular one doesn't say, in all respects. I think you just have to apply the law of Comerica to the language, Your Honor. That seems like quite a negative pregnant to infer from the absence of the words, in all respects. Well, I think if you look at the cases that Comerica relies upon, every single one of those cases went back to the actual contract themselves and did an analysis of the language. And so while it may have an incongruent result in this case, I think that's what the law requires. I don't see anything in the language that helps you. You're arguing not from the language but from the absence of language. You're suggesting that the parties really mean that basically an international corporation means to limit the effect of a choice of law clause it insists on, where it doesn't add language that isn't there, in all respects. That's your argument, isn't it? I think, Your Honor, that what Comerica requires us to do is look at the language. And if the language is not broad enough to incorporate... I'm looking... I understand. And yes, that's what I'm saying. I mean, I agree. There's nothing there that says, but claims other than those arising out of the contract are subject to the law of the state where the dealer is located. That's correct, but if you... That's the inferred language you want me to  answer, because I think... Do you want to leave the remaining time? Yes, I do. Thank you. I think you've actually plowed through most of it, so would you put two minutes on the clock, please? Your co counsel was very patient. He was twitching, but he was okay. He didn't look too anxious, but we're gonna give you your day in court. Thank you kindly, Your Honor. May it please the court, my name is Randy Cox. I represent UD Trucks Corporation. And because it distinguishes things, we use the term UD Japan. I make just one point, and that is to distinguish UD Japan's situation from what has been the focus of the discussion for the last 30 minutes or so. UD Japan is not a party to the dealer sales and service agreement. So the choice of law provision and how it's interpreted from that agreement does not affect UD Japan. We do a traditional choice of law analysis with respect to the claims against UD Japan. Judge Molloy, in his opinion, said... I mean, he looked at it, he said the most significant relationship is, of course, to Montana. And because of that, but for the contract, we wouldn't have... Montana law would apply. Your contract does not in any way refer to Texas laws. Is that what you're saying? I don't have a contract. There's no contract. Oh, that's right. So you're under normal conflicts. What you're saying is, you can sue North America for fraud, maybe, but not Japan, because Japan hasn't signed this deal that says Texas law applies. Exactly. And since that's so, then the Montana law applies, Montana statute of limitations law applies. This is a pretty easy analysis. Judge Molloy got it spot on, and we simply request that the judgment in favor of UD Japan. Thank you. Succinct, understandable, and to the point. We appreciate that. You have some rebuttal time. Thank you. With specific regard to the arguments raised by UD America, there's no disagreement from the standpoint of Montana Trucks that the Montana Supreme Court did not announce a bright line test. What they announced was a general rule, which is presumably subject to exceptions in the future. But that general rule clearly applies to the tort claims that survive in this case. The contract clearly applies to the tort claims. What about the UD Japan? That was interesting. That is an interesting point. It is a point... It sounds as though, assuming that all your arguments are right, you could sue UD North America for fraud, but not UD Japan. We would disagree, and here's why. We have alleged an alter ego theory against UD Japan, specifically that UD Japan so controlled UD America that a contract with UD America is a contract essentially with UD Japan. We would suggest that the appropriate resolution of that issue... I'm not gonna argue that UD America is under capitalized or something like that. We have no evidence of that, but what we... You'd have to, to argue alter ego, wouldn't you? What we do have evidence of, to be clear, is from the prior case that has been noted by both parties, the Pioneer Drive matter. We believe we have significant evidence, which would not be before this court, to be clear, of that alter ego theory. And is it under capitalized? It sounds like you have no evidence of alter ego theory, because it's never come up. At this juncture, we do not. However, I should have looked at the scheduling order, but I'm confident... It's a little unusual to be able to prove alter ego theory, except with very small businesses, because the whole notion of corporations is that they're recognizable, cognizable, separate entities. Correct, unless the lines are blurred, as we believe they were here. And the evidence we have was, in fact, developed in the prior case with a different entity, Pioneer Drive, same defendants. Much of that evidence, again, unfortunately, is not before this court, because it was not a part of the decision by the district court in this case. The district court... Can I just ask you, with respect to Japan, where is this argued in the appellate briefs? I'm sorry, I did not hear your question. With respect to UD Japan, where is this corporate piercing veil, etc., argued in the appellate briefs? The argument was not made by either party. Well, what the district court did, as I read it, it said it granted, in its entirety, the summary judgment in favor, and that would have to be appealed. So, if it wasn't addressed on appeal, it would seem that that would stand, would it not? Your Honor, the summary judgment order, the order granting summary judgment, granted that order as to Nissan Diesel America specifically. We consented to that order binding us, for purposes of Nissan Diesel Japan, essentially, to conclude the case. And so, our position would be that that issue was never addressed, and therefore, that issue... Right, but if you didn't appeal... I can't see how it's somehow a live issue, because the district court, by virtue of you wanting to get it up on a final judgment, it binds them, they have a summary judgment in their favor, or a judgment in their favor, correct? Correct. It does not address that issue. But it doesn't matter, because it's a final judgment, is it not? So, I'm having a little trouble understanding what the jurisdiction would be, because I just now am going back, looking through the briefs, and didn't see anything mentioned, and that's really the genesis of my question. That's a fair question. This court may determine that procedurally, that claim is now barred. Our position is that that claim was not ruled upon by the district court, and that the proper resolution is that that claim should be remanded for further fact finding. Okay, I think we have your position in mind. Let me just ask one thing. Yes. I don't know what the procedure is under Montana law, but under California law, normally you'd have to get a judgment against Diesel, and then you would be going against its alter ego if you couldn't satisfy your judgment against Diesel. Is that different in Montana law? Do you just go directly against the alter ego from the get go? Candidly, I did not come equipped to address that. No, if you don't know, you don't know, but I just thought I would ask that. I believe the analysis is, like many things in Montana law, not entirely as clear as we might like. Alright, thank you. Thank you for coming from Montana, everyone. The case of Montana Trucks versus UD Trucks and UD Japan Trucks
judges: Kleinfeld, McKeown, M. Smith